## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DAVID GANELES, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

    v.

OAKTREE CAPITAL GROUP, LLC, JAY WINTROB, HOWARD MARKS, BRUCE KARSH, JOHN FRANK, SHELDON STONE, ROBERT DENHAM, STEVEN GILBERT, LARRY KEELE, D. RICHARD MASSON, WAYNE PIERSON, MARNA WHITTINGTON, and DANIEL LEVIN,

                Defendants.

Civil Action No.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff David Ganeles ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Oaktree Capital Group, LLC ("Oaktree" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, unitholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Oaktree and the Defendants.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public unitholders of Oaktree against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Brookfield Asset Management, Inc. ("Brookfield") (the "Proposed Transaction").

2.      On March 13, 2019, Oaktree entered into an Agreement and Plan of Merger (the "Merger Agreement") with Brookfield.

3.      Pursuant to the terms of the Merger Agreement, Brookfield will acquire approximately 62% of the Oaktree business. Brookfield will acquire all outstanding Oaktree Class A units for, at the election of Oaktree Class A unitholders, either $49.00 in cash or 1.0770 Class A shares of Brookfield per unit.

4.      On June 20, 2019 in order to convince Oaktree's unitholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement on Form DEFM14A with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Oaktree and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Oaktree unitholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits unitholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   Additionally, the Company's units trade on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of Oaktree units.

10.      Defendant Oaktree is a California corporation with its principal executive offices located at 333 South Grand Ave, Los Angeles, CA 90071.  The Company's units are traded on the NYSE under the symbol "OAK."

11.      Defendant Jay Wintrob ("Wintrob") is and has been the Company's Chief Executive Officer and Co-Chairman of the Board at all times during the relevant time period.

12.      Defendant Howard Marks ("Marks") is and has been the Company's Co-Chairman of the Board at all times during the relevant time period.

13.     Defendant Bruce Karsh ("Karsh") is and has been a director of the Company at all times during the relevant time period.

14.     Defendant John Frank ("Frank") is and has been a director of the Company at all times during the relevant time period.

15.     Defendant Sheldon Stone ("Stone") is and has been a director of the Company at all times during the relevant time period.

16.     Defendant Robert Denham ("Denham") is and has been a director of the Company at all times during the relevant time period.

17.     Defendant Steven Gilbert ("Dorsey") is and has been a director of the Company at all times during the relevant time period.

18.     Defendant Larry Keele ("Keele") is and has been a director of the Company at all times during the relevant time period.

19.     Defendant D. Richard Masson ("Masson") is and has been a director of the Company at all times during the relevant time period.

20.     Defendant Wayne Pierson ("Pierson") is and has been a director of the Company at all times during the relevant time period.

21.     Defendant Marna Whittington ("Whittington") is and has been a director of the Company at all times during the relevant time period.

22.     Defendant Daniel Levin ("Levin") is and has been the managing director of the Company at all times during the relevant time period.

23.     Defendants Wintrob, Marks, Karsh, Frank, Stone, Denham, Gilbert, Keele, Masson, Pierson, Whittington, and Levin are collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants, along with Defendant Oaktree, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public unitholders of Oaktree (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

26.     This action is properly maintainable as a class action for the following reasons:

a.     The Class is so numerous that joinder of all members is impracticable. As of May 17, 2019, there were 75,656,902 Oaktree class A units outstanding and 84,001,461 Oaktree class B units outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

       d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

       e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

       f.      A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

27.      Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

28.      Oaktree is an American global asset management firm specializing in alternative investment strategies. It is the largest distressed securities investor in the world, as well as one of the largest credit investors in the world.

### The Company Announces the Proposed Transaction

29.      On March 13, 2019, Oaktree issued a press release announcing the Proposed Transaction.  The press release stated in part:

**Brookfield to Acquire 62% of Oaktree Capital Management**

Together, Brookfield and Oaktree will provide global investors with one of the most comprehensive offerings of alternative investment products available in the marketplace today

Howard Marks, Bruce Karsh, and other members of Oaktree Capital Group Holdings, L.P. will own 38% and retain operating control of Oaktree

Oaktree Class A unitholders can elect to receive for each Oaktree Class A unit either $49.00 in cash or 1.0770 Brookfield Class A shares to enable them to stay invested in the overall business

NEW YORK, March 13, 2019 (GLOBE NEWSWIRE) -- Brookfield Asset Management Inc. ("Brookfield") (NYSE: BAM, TSX: BAM.A, Euronext: BAMA) and Oaktree Capital Group, LLC (NYSE: OAK) ("Oaktree") today announced an agreement whereby Brookfield will acquire approximately 62% of the Oaktree business. As part of the transaction, Brookfield will acquire all outstanding Oaktree Class A units for, at the election of Oaktree Class A unitholders, either $49.00 in cash or 1.0770 Class A shares of Brookfield per unit (subject to pro-ration). This represents a premium of 12.4% per Oaktree Class A unit, based on the closing price of Oaktree Class A units and Brookfield Class A Shares on March 12, 2019 and a 15.9% premium based on the 30-day Volume-Weighted Average Price of Oaktree Class A units. The Oaktree Board of Directors, acting on the recommendation of a special committee, composed of non-executive, independent directors, has unanimously recommended that Oaktree unitholders approve the transaction.

Both Brookfield and Oaktree will continue to operate their respective businesses independently, partnering to leverage their strengths – with each remaining under its current brand and led by its existing management and investment teams. Howard Marks will continue as Co-Chairman of Oaktree, Bruce Karsh as Co-Chairman and Chief Investment Officer, and Jay Wintrob as Chief Executive Officer. Howard Marks and Bruce Karsh will continue to have operating control of Oaktree as an independent entity for the foreseeable future. In addition, Howard Marks will join Brookfield's board of directors.

The two companies together will have approximately $475 billion of assets under management and $2.5 billion of annual fee-related revenues, making this one of the leading alternative asset managers, with one of the most comprehensive suites of alternative investment products for investors worldwide. The transaction is expected to be accretive to Brookfield on a per share basis before any benefits from the combination.

Bruce Flatt, CEO of Brookfield, stated, "As we continue to strategically grow Brookfield, we are thrilled to be partnering with Oaktree and with its exceptional management team whose credit business is second to none. This transaction enables us to broaden our product offering to include one of the finest credit platforms in the world, which has a value-driven, contrarian investment style, consistent with ours."

Howard Marks, Co-Chairman of Oaktree, stated, "The opportunity to join forces with Brookfield is ideal. Our firms share a culture that emphasizes both investing excellence and integrity, and our businesses mesh without overlapping or conflicting. The rest of Oaktree management and I are excited about the

combination of support and independence we expect. We look forward to having Brookfield's contribution to our ability to serve our clients, and to doing the same for them."

**Transaction Details**

Under the terms of the agreement, Oaktree Class A units will be acquired for a per unit consideration of, at the election of Oaktree Class A unitholders, either $49.00 in cash or 1.0770 Brookfield Class A shares. Elections will be made on a per unit basis and will be subject to pro-ration such that the total consideration paid by Brookfield consists of 50% in cash and 50% in Brookfield shares. In addition, the founders, senior management, and current employee-unitholders of Oaktree Capital Group Holdings, L.P. ("OCGH"), the holder of all outstanding Class B units of Oaktree as well as a direct interest in certain of Oaktree's operating entities, will sell to Brookfield 20% of their units for the same consideration as the Oaktree Class A unitholders.

Pursuant to the agreement, Oaktree may declare and pay a distribution in respect of the quarter ending March 31, 2019 in an amount up to $1.05 per Oaktree Class A unit. No further distributions on the Oaktree Class A units may be paid unless the transaction has not closed by September 30, 2019, in which case distributions in respect of Q3 2019 and any other quarter thereafter until closing may be paid in the ordinary course on Oaktree Class A units, subject to certain limitations set forth in the agreement.

The cash portion of the aggregate consideration will be funded by Brookfield from available liquidity. Upon consummation of the transaction, Brookfield will own approximately 62% of the Oaktree business, and the OCGH unitholders, consisting primarily of Oaktree's founders and certain other members of management and employees, will own the remaining approximately 38%.

Commencing in 2022, former employee-unitholders will be able to sell their remaining Oaktree units to Brookfield over time pursuant to an agreed upon liquidity schedule and approach to valuing such units at the time of liquidation, and Oaktree's founders, senior management and current employee-unitholders will have the option to do so as well. Pursuant to this liquidity schedule, the earliest year in which Brookfield could own 100% of the Oaktree business is 2029.

The agreement includes customary provisions relating to non-solicitation, the ability of Oaktree's board of directors to respond to any unsolicited superior alternative proposals, and Brookfield's right to match such proposals. The agreement also provides for the payment by Oaktree of a $225 million termination fee if the agreement is terminated under certain specified circumstances.

The transaction is subject to the approval of Oaktree unitholders representing at least a majority of the voting interests of Oaktree and other customary closing

conditions, including certain regulatory approvals. OCGH, controlled by Howard Marks and Bruce Karsh, and which represents approximately 92% of the voting interests of Oaktree, has agreed to vote all of its units in favor of the transaction. The transaction is expected to close in the third quarter of 2019.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

30.     On June 20, 2019, the Company filed the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's unitholders vote in favor of the Proposed Transaction.

31.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's unitholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Management's Financial Projections

32.     The Proxy Statement contains financial projections prepared by Brookfield's senior management given to Oaktree in connection with the Proposed Transaction, but fails to provide material information concerning such.

33.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

34.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

35.     Specifically, the Proxy Statement fails to disclose the material line items for: (i) fee related earnings; (ii) carried interest; (iii) free cash flow; and (iv) unlevered free cash flow.

36.     Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Perella Weinberg's Financial Opinion

37.     The Proxy Statement contains the financial analyses and opinion of Perella Weinberg Partners LP ("Perella Weinberg") in connection with the Proposed Transaction, but fails to provide material information concerning such.

38.     With respect to Perella Weinberg's *Selected Publicly Traded Companies Analysis of Oaktree*, the Proxy Statement fails to disclose: (i) the closing price per share for each of the selected companies; and (ii) the DEPS multiples for each of the selected companies.

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

39.     With respect to Perella Weinberg's *Precedent Transactions Analysis of Oaktree*, the Proxy Statement fails to disclose the Price/Earnings observed for each of the selected transactions.

40.     With respect to Perella Weinberg's *Discounted Cash Flow Analysis of Oaktree*, the Proxy Statement fails to disclose: (i) the inputs and assumptions used in the calculation of discount rates ranging from 9.0% to 10.5%; (ii) the inputs and assumptions used in the calculation of multiples ranging from 11.5x to 15.5x; and (iii) the inputs and assumptions used in calculation of multiples ranging from 5.75x to 7.75x.

41.     With respect to Perella Weinberg's *Selected Publicly Traded Companies Analysis of Brookfield*, the Proxy Statement fails to disclose: (i) the criteria by which they determined each selected company to be similar to Brookfield; and (ii) the specific FRE multiples for each of the companies selected for years 2019 and 2020.

42.     With respect to Perella Weinberg's *Discounted Cash Flow Analysis of Brookfield*, the Proxy Statement fails to disclose: (i) the inputs and assumptions used in the calculation of discount rates ranging from 9.0% to 10.5%; (ii) the inputs and assumptions used in the calculation of multiples ranging from 11.5x to 15.5x; and (iii) the inputs and assumptions used in calculation of multiples ranging from 5.75x to 7.75x.

43.     With respect to Perella Weinberg's *Equity Research Analyst Price Targets of Oaktree*, the Proxy Statement fails to disclose which specific research analyst price targets were used.

44.     With respect to Perella Weinberg's *Equity Research Analyst Price Targets of Brookfield*, the Proxy Statement fails to disclose which specific research analyst price targets were used.

45.     With respect to Perella Weinberg's *Precedent Premia Analysis*, the Proxy Statement fails to disclose which specific acquisitions were selected for its analysis as well as the premiums paid in each transaction selected.

46.     Lastly, the Proxy Statement notes that Perella Weinberg was paid "customary compensation" by Proserv Global LLP in connection with the debt-for-equity exchange, but fails to disclose the amount of compensation received.

47.     When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides unitholders with a basis to project the future financial performance of a company and allows unitholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

48.     Without the above described information, the Company's unitholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide unitholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Sandler O'Neill's Financial Opinion

49.     The Proxy Statement contains the financial analyses and opinion of Sandler O'Neill & Partners, L.P., ("Sandler O'Neill") in connection with the Proposed Transaction, but fails to provide material information concerning such.

50.     With respect to Sandler O'Neill's *Oaktree Comparable Company Analysis*, the Proxy Statement fails to disclose the 2019/2020 estimated revenue, 2019/2020 estimated

distributable earnings per share, and enterprise value for each of the comparable companies selected.

51.    With respect to Sandler O'Neill's *Brookfield Comparable Company Analysis*, the Proxy Statement fails to disclose the Estimated FFO per Share and 2019/2020 Estimated Earnings per Share for each of the companies selected.

52.    Without the above described information, the Company's unitholders are unable to cast a fully informed vote on the Proposed Transactions.   Accordingly, in order to provide unitholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

53.    The Proxy Statement contains information concerning the sales process leading up to the Proposed Transaction, but fails to provide material information concerning such.

54.    The Proxy Statement does not disclose whether there were any discussions of any of Oaktree's management continuing employment following the consummation of the Proposed Transaction.

55.    Lastly, the Proxy Statement notes that on multiple occasions Brookfield sent lists of supplemental due diligence requests to Oaktree, but fails to disclose the contents thereof.

56.    Without the above described information, the Company's unitholders are unable to cast a fully informed vote on the Proposed Transactions.   Accordingly, in order to provide unitholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)**

**of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

59.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

60.     Defendants have issued the Proxy Statement with the intention of soliciting unitholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

61.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose

such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

62.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

63.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

64.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

65.     The misrepresentations and omissions in the Proxy Statement are material to

Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

66.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Oaktree within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Oaktree, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

69.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

71.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

74.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 3, 2019                                      Respectfully submitted,


                                                         By: /s/ Joshua M. Lifshitz
                                                         Joshua M. Lifshitz
                                                         Email: jml@jlclasslaw.com
                                                         **LIFSHITZ & MILLER LLP**
                                                         821 Franklin Avenue, Suite 209
                                                         Garden City, New York 11530
                                                         Telephone: (516) 493-9780
                                                         Facsimile: (516) 280-7376

                                                         *Attorneys for Plaintiff*

## CERTIFICATE OF NAMED PLAINTIFF

I, David Ganeles, certify that:

1.      I have reviewed the complaint and authorized its filing.

2.      I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Oaktree Capital Group LLC securities that are the subject of this litigation during the class period set forth in the complaint are as follows:

| Security | Date of Transaction | Number of Shares Stating Whether Purchased(P) or Sold(S) | Price Per Share |
|---|---|---|---|
| OAK | Prior to March 1, 2019 | (P) 107.2 | $49.36 |

5.      I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

DAVID GANELES